UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

===============================================================

PAUL KORTHAS,

                              Plaintiff,

v.                                              5:04-CV-537
                                                (NPM /GHL)

CITY OF AUBURN, CHIEF GARY J.
GIANNOTTA, OFFICER C. MAJOR,
OFFICER HUTCHINGS, SERGEANT D.A.
McLOUGHLIN, LIEUTENANT EMMI,
CAPTAIN NEAGLE, JOHN DOE I,
JOHN DOE II, and JOHN DOE III, Individually
And as Employees of the City of Auburn,

                              Defendants.

===============================================================

APPEARANCES                    OF COUNSEL

OFFICE OF GEORGE S. MEHALLOW        GEORGE S. MEHALLOW, ESQ.
Attorney for Plaintiff
2700 Bellevue Avenue
Syracuse, N.Y. 13219

PETRONE & PETRONE, P.C.        DAVID H. WALSH, IV, ESQ.
Attorney for Defendants
1624 Genesee Street
Utica, New York 13502

PETRONE & PETRONE, P.C.        JOHN PETRONE, ESQ.
Attorney for Defendants
1624 Genesee Street
Utica, New York 13502

1

NEAL P. McCURN, Senior U.S. District Court Judge

MEMORANDUM-DECISION AND ORDER

## I.    Introduction

Plaintiff Paul Korthas ("Korthas") brings this civil rights action against the City of Auburn, Police Chief Giannotta, Officer Major, Officer Hutchings, Sergeant McLoughlin, Lieutenant Emmi, Captain Neagle, and John Does I, II, and III (collectively, "Defendants") pursuant to 42 U.S.C. § 1983.  Korthas seeks redress for alleged violations of his civil rights secured to him by certain Amendments of the United States Constitution, enumerated below, in the form of general damages, punitive damages, and legal costs and expenses, including reasonable attorneys' fees. The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 1343(a)(3).

Currently before the Court is the Defendants' Motion for Summary Judgment (Dkt. No. 30, the "Motion") pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.").  For the reasons set forth below, the Defendants' Motion will be granted in part and denied in part.

## II.   Background

The following undisputed facts are taken from the parties' Local Rule 7.1(f) Statement of Material Facts Not in Dispute (Dkt. No. 30, Attachment No. 1) and from

the complete record.  For the purpose of this Motion, the Court accepts facts

undisputed by the parties as true, and resolves disputed facts in favor of Korthas, the

non-moving party, where the record supports his allegations.

Korthas is learning disabled.  On March 23, 2002, Korthas was employed at

Northeast Foods in Auburn, NY.  That same date, Ralph Cooper ("Cooper") was also

employed by Northeast Foods, as Korthas' supervisor.  Korthas and Cooper were

involved in an incident wherein Cooper reprimanded Korthas for his work performance

and called Korthas a "retard."  As a result of Cooper's comment, Korthas was upset

and crying.  Korthas requested that fellow employee Lori White ("White") file a

grievance against Cooper on Korthas' behalf.[1]

Korthas left work on March 23, 2002 without incident, believing that corrective

action would be taken against Cooper for his comment toward Korthas.  White never

followed up on the incident, nor did she file a grievance.  When Korthas returned to

work on Tuesday, March 26, 2002, he learned that no corrective action had been taken

against Cooper.  Joseph Sherman ("Sherman") and Robert Blauvelt ("Blauvelt") were

also employees of Northeast and were working that day.  Korthas related to Sherman

that Cooper had called Korthas a retard, and that he, Korthas, was hurt, and no one had

a right to call him a retard.  Korthas also told Sherman that White had not filed a

---

[1]    White was "Shop Chairman" at Northeast on March 23, 2002. (See Korthas Dep.
at 25, Dkt. No. 30-3, A1.)

3

grievance against Cooper as he had requested. (Dkt. No. 30, Attachment No. 1.)

In the course of the conversation between Korthas and Sherman, which purportedly lasted a couple of minutes, Korthas was "playing with" (opening and closing) a folding knife with a three to four inch blade. (Korthas Dep. pp. 45-46.) Blauvelt allegedly came on the scene when Korthas and Sherman were talking, or shortly thereafter.  (Korthas Dep. pp. 45-47.)  Sherman and Blauvelt swore in subsequent affidavits that Korthas stated his intention to use the knife on Cooper. (Sherman Aff. ¶ 6; Blauvelt Aff. ¶ 6.)

After the conversation concluded, Blauvelt contacted White, and informed her of the alleged threats made by Korthas.  White contacted her supervisor, Ron Wawrszack, who in turn notified his supervisor, Bill Bos. (White Aff. ¶¶ 5-7.)  Bos, who was off-premises at a meeting, states that he was informed by Wawrszack that Korthas was waving a knife and threatening other employees.  Upon returning to the plant, Bos telephoned the Auburn Police Department to request assistance "because an employee named Paul Korthas was waving a knife and threatening employees." (Bos. Aff. ¶ 6.)

Korthas attempted to leave work at noon on March 26, 2002, at the end of his shift.  By this time, officers from the Auburn police department had arrived at Northeast.  Bos stated that when two officers arrived on the scene, Korthas came into view, and Bos identified Korthas as "the guy that we were referring to."  Bos then

4

"observed the officer approach Paul Korthas, place him against the wall and proceed to handcuff him." (Bos Aff. ¶¶ 3-10.)

Korthas was handcuffed by Officer Major, and a knife was taken from Korthas' pocket. (Korthas Dep. at 52, 56; Major Aff. ¶¶ 9-10.)  Korthas was first taken to a conference room located on the Northeast premises. (Korthas Dep. at 52.)  He was later taken to the Auburn police station and charged with Harassment in the Second Degree. An information/complaint was signed later that day by Blauvelt, accusing Korthas of threatening Blauvelt with a knife after an argument. (Dkt. No. 34, Attachment No. 2.)

On March 27, 2002, Korthas was arraigned in Auburn City Court on the charge of Harassment in the Second Degree, and entered a plea of not guilty.  The charge of harassment was subsequently dismissed by the court on May 20, 2002. (Dkt. No. 30, Exhibit C.)

In Korthas' response to the Local Rule 7.1(f) statement, he admits the above facts and alleges the following: while he admits being handcuffed by only one officer, he states that he was initially grabbed by four or five officers.  As Korthas reached for his time card, the police grabbed his arms without warning and pushed him against the wall, "cracking" his back. (Korthas Aff. ¶ 3, Dkt. No. 34 Attachment 1.)

Regarding the pocket knife in his possession, Korthas states that it was ordinary and necessary to have a knife to open packaging materials in the plant, that management was aware of this knife, and that other workers also had knives.  When

5

Korthas was placed into custody at 12:05 p.m. on March 26, 2002, as stated on the appearance ticket and supporting deposition (Dkt. No. 34, Exhibit 2), Korthas was going about his normal duties and the knife was not displayed.  The knife was closed and in his pocket. (Korthas Aff. ¶¶ 2-3; Major Aff. ¶ 9 .)

Upon Korthas' arrival at the Auburn Police Station, he was placed in a room where officers refused to loosen his handcuffs after Korthas complained that the cuffs were too tight.  An unnamed officer took the right handcuff off and handcuffed him to the wall by the left hand, saying to Korthas that "we don't know what's going on,"and referring to Korthas as a "criminal." (Korthas Dep. at 69.)  Captain Neagle testified that upon his arrival at the Auburn Police Station that day, he inquired as to why Korthas was in custody, and no one present knew why. (Neagle Dep. at 8.)  Korthas alleges that he heard police personnel say that they had to find something to charge him with. (Korthas Dep. at 65.)

As a threshold matter, the Court finds that both the original and the amended complaints are woefully inadequate in setting forth Korthas' legal claims.  However, the record reflects that Defendants did not move for Korthas to file a more definite statement. The Court questions whether the amended complaint meets the minimal notice pleading of Fed. R. Civ. P. 8(a)(2), which requires only a "short and plain statement of the claim showing that the pleader is entitled to relief."  While district courts in this circuit may, sua sponte, dismiss a complaint for failure to comply with

Rule 8 (see Kittay v. Kornstein, 230 F.3d 531, 542 (2d Cir. 2000)), the Second Circuit has reversed such a dismissal "after observing that the defendants did not even remotely suggest that the amended complaint failed to comply with Rule 8, or that it did not give them notice of the substance of the plaintiff's claims, or that it was otherwise unintelligible ...." Id. (internal quotations omitted).  In Kittay, as in the case at bar, the Defendants promptly answered both the original and the amended complaints, and in doing so, demonstrated that the complaints were adequate and/or were not unintelligible.[2]

Due to the lack of clarity in Korthas' amended complaint, the Court turns to the Proposed Civil Case Management Plan filed by both parties to ascertain the causes of action.  The Rule 26(f) plan stated Korthas' claims as false arrest; unreasonable search and seizure and detention; malicious prosecution; and denial of due process and equal protection.  In their Motion, the Defendants construe the first three claims as false arrest, false imprisonment, and malicious prosecution.  The Court concurs, and also construes the complaint as claiming excessive force, as well as denial of due process

---

[2]    In addition to the confusion over Korthas' claims, the Court notes that despite federal question jurisdiction, the amended complaint states an amount in controversy in its jurisdiction paragraph, listing the amount sought as damages as $50,000 on page 2 and as $75,000 on page 5.  The Preliminary Statement and Prayer for Relief contained in the Amended Complaint claims violations of the Fifth, Eighth, Ninth and Fourteenth Amendments, while the section entitled Legal Claims cites violations of the Fourth, Sixth and Fourteenth Amendments. Korthas' responsive pleading to the Defendants' Motion is also inadequate, citing no case law whatsoever.

and equal protection pursuant to the Amendments to the United States Constitution. Because the excessive force, due process and equal protection claims are not included in the Defendants' Motion, these claims will stand. The claims of false arrest, false imprisonment and malicious prosecution will be addressed forthwith.

## III.   Discussion

### A.   Legal Standards

#### 1.   Summary Judgment

A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). See also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82 (2d Cir. 2004). "[I]n assessing the record to determine whether there is a genuine issue as to a material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought[.]" See Security Ins., 391 F.3d at 83, citing Anderson V. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), citing Anderson, 477 U.S. at 250-51.

While the initial burden of demonstrating the absence of a genuine issue of material fact falls upon the moving party, once that burden is met, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial," see Koch v. Town of Brattleboro, Vermont, 287 F.3d 162, 165 (2d Cir. 2002), citing Fed. R. Civ. P. 56(c), by a showing sufficient to establish the existence of every element essential to the party's case, and on which that party will bear the burden of proof at trial, see Peck v. Public Serv. Mut. Ins. Co., 326 F.3d 330, 337 (2d Cir. 2003), cert. denied, 124 S.Ct. 540 (2003).

### 2.   42 U.S.C. § 1983 Generally

In order to prevail on a claim under  42 U.S.C. § 1983, a plaintiff must establish the violation of a right secured by the Constitution and laws of the United States, and that the violation was committed by a person acting under color of state law.  Section 1983 states in pertinent part that

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

42 U.S.C. § 1983 (West 2006).

### a.      False Arrest and Imprisonment

A § 1983 claim for false arrest and imprisonment derives from the "Fourth

Amendment right to remain free from unreasonable seizures, which includes the right

to remain free from arrest without probable cause.  In analyzing § 1983 claims for

unconstitutional false arrest, [the Second Circuit has] generally looked to the law of the

state in which the arrest occurred." Jaegly v. Couch, 439 F.3d 149, 152 (2d Cir. 2006).

In order to establish a claim for false arrest and/or imprisonment under § 1983

and New York law, a plaintiff must show that the defendant intentionally confined him

without his consent and without justification. Swindell v. New York Dept. of

Environmental Conservation, 371 F. Supp. 2d 172, 179 (N.D.N.Y. 2005).  "Whether

probable cause [to arrest] exists depends upon the reasonable conclusion to be drawn

from the facts known by the arresting officer at the time of arrest." Devenpeck v.

Alford, 543 U.S. 146, 152 (2004).  "The validity of the arrest does not depend on

whether the suspect actually committed a crime; the mere fact that the suspect is later

acquitted of the offense for which he is arrested is irrelevant to the validity of the

arrest." Michigan v. DeFillippo, 443 U.S. 31, 36 (1979).

"An officer has probable cause to arrest when he or she has knowledge or

reasonably trustworthy information of facts and circumstances that are sufficient to

warrant a person of reasonable caution in the belief that the person to be arrested has

10

committed or is committing a crime." <u>Jaegly</u>, 439 F.3d at 152.  "Probable cause is  a

justification for, and a complete defense to, a claim for false arrest and imprisonment

under both § 1983 and New York law." <u>Swindell</u>, 371 F. Supp. 2d at 179 (<u>citing</u>

<u>Weyant</u>, 101 F.3d at 852).


### b.   Malicious Prosecution

"Although § 1983 provides plaintiffs with a federal cause of action, [the Second

Circuit] borrow[s] the elements of the underlying malicious prosecution from state

law." <u>Washington v. County of Rockland</u>, 373 F.3d 310, 315 (2d Cir. 2004).  In order

to prevail in an action for malicious prosecution in New York, a plaintiff must prove:

"1) the initiation or continuation of a criminal proceeding against plaintiff; 2)

termination of the proceeding in plaintiff's favor; 3) lack of probable cause for

commencing the proceeding; and 4) actual malice as a motivation for defendant's

actions." <u>Russell v. Smith</u>, 68 F.3d 33, 36 (2d Cir. 1995).  "The absence of probable

cause is an essential element of a claim for malicious prosecution." <u>McClellan v.</u>

<u>Smith</u>, 439 F.3d 137, 145 (2d Cir. 2006).

"If, following the arrest, the plaintiff was convicted of the charges against him,

that conviction would normally be evidence of probable cause ... A conviction that has

been reversed on appeal is no evidence of probable cause; to the contrary, evidence of

11

a subsequent dismissal, acquittal, or reversal on appeal would ... be admissible to refute ... justification." <u>Weyant v Okst</u>, 101 F.3d 845, 852 (2d Cir. 1996) (internal quotes omitted).  However, false arrest, *supra*, and malicious prosecution need to be analyzed separately by the court.  "[T]he New York Court of Appeals has expressly held that the presumption of probable cause arising from an indictment applies only in causes of action for malicious prosecution and is totally misplaced when applied in false arrest actions." <u>Savino v. City of New York</u>, 331 F.3d 63, 75 (2d Cir. 2003) (internal quotes omitted).

"[T]o prevail on a claim of malicious prosecution, a plaintiff must prove that the prosecution was motivated by malice.  Malice means that the defendant must have commenced the prior criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served." <u>Brogdon v. City of New Rochelle</u>, 200 F. Supp. 2d 411, 423 (S.D.N.Y. 2002).  "There must be a showing of some deliberate act punctuated with awareness of conscious falsity to establish malice." <u>Id.</u> (internal quotations omitted).  Police officers "may not purposely withhold or ignore exculpatory evidence that, if taken into account, would void probable cause ... [A] failure to make further inquiry when a reasonable person would have done so may evidence a lack of probable cause." <u>Carbajal v. Village of Hempstead</u>, 2006 WL 845384 (E.D.N.Y. 2006).

"[T]he defendants bear the burden of proving that probable cause existed for the plaintiff's arrest." Id. at 76.  However, "even when probable cause is present at the time of arrest, evidence could later surface which would eliminate that probable cause. If probable cause were no longer present at the time of the arraignment ..., malicious prosecution might then lie." Cox v. County of Suffolk, 780 F. Supp. 103, 108 (E.D.N.Y. 1991) (internal quotations omitted).


### 3.    Qualified Immunity

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  "In a suit against an officer for an alleged violation of a constitutional right, the requisites of a qualified immunity defense must be considered in proper sequence. Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive. Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'"  The privilege of qualified immunity is "an immunity from suit rather than a mere defense to liability," and if the case is erroneously allowed to go to

trial, the privilege is lost. <u>Saucier v. Katz</u>, 533 U.S. 194, 200 (2001). In order for a court to find that a defendant is entitled to summary judgment on qualified immunity grounds, "the court must find that no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to [] the plaintiffs, could conclude that it was objectively unreasonable for the defendant to believe that he was acting in a fashion that did not clearly violate an established federal right." <u>Id.</u>

### B.     Application of the Law to the Facts of this Case

The record shows, and it is undisputed, that the General Plant Manager of Northeast Foods, Bill Bos, placed a call to the Auburn Police Department, requesting assistance because an employee, Paul Korthas, was "waving a knife and threatening employees." An undetermined number of officers arrived on the scene and proceeded to take Korthas into custody. Based on the information received by the department, a reasonable officer would believe that the plant manager was a reasonably trustworthy party, and was imparting information about facts and circumstances sufficient to warrant the officer or officers to believe that Korthas had committed or was

14

committing a crime.[3]  The Court finds that the officers had probable cause to make the arrest, and grants summary judgment to the Defendants on the claim of false arrest and imprisonment.

On the claim of malicious prosecution, the Court looks to the facts before it, including Korthas' testimony that he heard police personnel say that they had to find something to charge him with, and Neagle's testimony that there was confusion surrounding why Korthas was in custody.  In addition, the information signed by Blauvelt is at odds with the affidavits and depositions filed with the Motion.[4]

The Court, in considering the requirements to support a claim for malicious prosecution, finds that Korthas has presented evidence for all four elements.  Korthas states that (1) an action was initiated by the Defendants against him; (2) Korthas asserts that said action was begun by malice inasmuch as he alleges that the officers were scrambling to find something to charge him with; (3) probable cause did not exist for the charge; and (4) the charge was subsequently dismissed.[5]  The Court finds that

---

[3]     Under New York Penal Law § 240.26(1), "[a] person is guilty of harassment in the second degree when, with intent to harass, annoy or alarm another person, (1) He or she strikes, shoves, kicks or otherwise subjects such other person to physical contact, or attempts or *threatens* to do the same ...." N.Y. Pen. Law § 240.26(1) (emphasis added) (West 2006).

[4]     The statement made by Blauvelt to White was that Korthas was threatening to injure Cooper with the knife, but the information signed by Blauvelt indicated that Blauvelt feared for his own safety after an argument with Korthas.

[5]     The Defendants also question whether the harassment charge was terminated in Korthas' favor, and state that Korthas has not met his burden on this issue, but Korthas has

reasonable minds could differ on whether any exculpatory evidence might have been made known to the authorities between Korthas' arrest, the delayed filing of the charge of harassment, and the time that Korthas was arraigned.

The task of determining if the probable cause which supported the arrest was undermined by subsequent actions, opening the door to a claim for malicious prosecution, will be left to the trier of fact.  In addition, reasonable minds could conclude that, if exculpatory evidence was available prior to Korthas' being charged with harassment and his subsequent arraignment, it was objectively unreasonable for the defendant to believe that he was acting in a fashion that did not clearly violate an established federal right. Accordingly, summary judgment is denied as to the claim of malicious prosecution, and qualified immunity will not shield the Defendants from trial on this matter.

## IV.    Conclusion

For the reasons set forth above, Defendants' Motion for Summary Judgment is hereby granted in part and denied in part, as follows: the Court hereby

(1) GRANTS Defendants' Motion on the issue of false arrest and imprisonment; and

(2) DENIES Defendants' Motion on the issue of malicious prosecution.

(3) The case is referred back to the Honorable George H. Lowe, Magistrate Judge, for

---

proffered evidence that the proceeding culminated in dismissal.

16

the purpose of determining if a settlement conference is desired by the parties.  If no

settlement conference is desired, the Court will set this matter down for trial on the

remaining claims of malicious prosecution, excessive force, and violation of Korthas'

due process and equal protection rights.

       SO ORDERED.

June 9, 2006

                                                  Neal P. McCurn
                                                  Senior  U.S. District Judge